RUTLEDGE *v.* GILLESPIE.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

Testimony is reviewed by the Supreme Court in the light most favorable to the plaintiff on defendant's appeal from denial of motions to direct verdict in their favor and for new trial on the ground that injured plaintiff had been guilty of contributory negligence as a matter of law.

2. AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

The question of whether or not 18-year-old pedestrian crossing easterly on a 50-foot boulevard on a dark, rainy night in December was guilty of contributory negligence in failing to observe the approach of defendants' southbound taxicab was properly submitted to jury, where there was conflicting testimony as to how the accident happened, credibility of the witnesses being for the jury.

Appeal from Wayne; Maher (Thomas F.), J. Submitted October 14, 1953. (Docket Nos. 74, 75, Calendar Nos. 45,968, 45,969.) Decided November 27, 1953. Rehearing denied January 14, 1954.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 947.
[2] 5 Am Jur, Automobiles §§ 450, 451, 671, 705, 706.

Separate actions by Patricia Rutledge, by William Rutledge, her next friend, and William Rutledge against Thomas A. Gillespie and another for damages suffered when Patricia was hit by defendants' automobile. Cases consolidated. Verdicts and judgments for plaintiffs. Defendants appeal. Affirmed.

*Rothe, Marston, Bohn & Mazey* (*Theodore Sachs,* of counsel), for plaintiffs.

*Edward N. Barnard,* for defendants.

BOYLES, J. This is an appeal from judgments for the plaintiffs for damages resulting from an automobile-pedestrian accident. Plaintiff Patricia Rutledge, then about 18 years of age, sued defendant Gillespie, the driver, and defendant Bleil, the owner of a taxicab which struck her when she was crossing East Grand boulevard in Detroit. Her father, William Rutledge, also sued to recover medical expenditures and for loss of services of his daughter. The 2 cases were consolidated for trial by jury, and again here on the appeal. The plaintiffs had verdicts, and from the judgments entered thereon the defendants appeal.

The negligence of the taxicab driver is not denied. The only claim of the defendants for reversal is that the plaintiff Patricia was guilty of contributory negligence as a matter of law. At the trial, at the close of plaintiffs' proofs and again at the close of all the proofs, the defendants moved for a directed verdict on that ground. Later, the defendants also moved for a new trial on the same ground. The motions were denied.

Did the trial court err in submitting to the jury the question whether the plaintiff Patricia Rutledge was guilty of contributory negligence? Under the circumstances, we review the testimony in the light most favorable to the plaintiffs.

The accident occurred in the center of East Grand boulevard in Detroit, opposite Preston street which ends at the boulevard, on a dark, rainy night in December, 1949. At that point the boulevard is about 50 feet wide and runs approximately north and south. It has parking at both the east and west curbs, plus room for 2 lanes of traffic each way. There is no center-line marking. Plaintiff Patricia and a friend, Stanley Herold, were on their way to attend a class play at a high school building on the east side of the boulevard. He was taking her in his car from her home to the school building and had parked at the west curb on the boulevard, opposite the school building. As they got out of the car to go east across the boulevard they both looked both ways, north and south, on the boulevard. There was no traffic toward them from the north between them and the next cross street, Mack avenue. At Mack avenue the traffic light was red against traffic on the boulevard, and cars were standing north of the intersection, facing south, waiting for the light to change. Plaintiff and her companion walked east, across the west half of the boulevard (the south-bound lane) side by side, close enough so their clothing might touch, and stopped at the center of the boulevard to wait for cars approaching from the south in the east half of the boulevard. They had been there less than a minute when Patricia was struck by defendants' taxicab coming from the north. She had not moved, her forward progress delayed by several cars on the east part of the boulevard going north. Patricia testified that she did not remember whether she looked north again after they were in the center of the boulevard. She did not see the taxicab that struck her.

A disinterested witness, the driver of one of the cars going north on the east side of the boulevard, for which the plaintiff was waiting at the center,

testified that he was driving nearest the center of the boulevard in a group of cars. He saw plaintiff and her male companion standing in the center of the street and saw cars coming from the north on the boulevard. He saw the man step forward into his lights and had to veer to his right to avoid hitting him. He saw the taxicab hit the woman, who was the plaintiff Patricia. He testified:

"I saw the car that struck the people. That car was coming. Going towards Jefferson.

"*Q.* Was it coming directly south or due south in accordance with the manner in which the street runs?

"*A.* It was coming out from behind another car, clearing another car.

"*Q.* Was it heading parallel to the curb of the street or heading towards the center?

"*A.* He turned out from the back of another car and struck the woman. He turned towards the center of the street."

On cross-examination, he testified:

"In other words, as I am approaching Preston, I am driving to the right of the center. And the wheels on the left side of my car were about 12 inches from the imaginary center line of the boulevard. * * *.

"*Q.* And that is the position that you maintained when you went beyond the center and passed the people that were on the street?

"*A.* No, I told you 6 feet away. * * * As I was driving north, I was driving to the right of the center and observed these 2 people in the street and changed to further away."

Patricia's companion, Stanley Herold, testified:

"After I parked my car, we got out of the car. Both of us. We walked east. I am sure my car was parked south of Preston on the west side of the street. We walked east. In other words to go to the high school. We were together. That is we were close to each other. Side by side. We stopped in

the middle, sir. When we stopped, we were still in the same position as we were before, I mean side by side. When we stopped there, I turned my head north. I mean south, rather. I turned my head south. I saw this car coming. I turned my head back again also and I heard Patricia scream and she was down. I remained standing there myself. I am sure about that."

On cross-examination, he testified:

"I saw Patricia just before she was hit. I saw her before I turned my head. Just before I turned my head she was standing next to me. Then I turned left, I looked back, and she was hit. I didn't see her get hit. I said I was standing still.

"*Q.* Are you sure whether or not you moved at all? Are you absolutely positive?

"*A.* Yes, it happened so long ago, I can't exactly recall. I am sure I was standing still."

Defendant Gillespie, testifying in his own behalf, said:

"*Q.* Mr. Gillespie, how far were you from the scene of the accident, that is the place where the accident occurred, when you first saw these pedestrians?

"*A.* About 40 or 45 feet.

"*Q.* All right. Now do you know where the pedestrians were when you saw them? Where were they in reference to the street? What part of the street were they in?

"A. They were directly in the center of the boulevard crossing and they would be in the direct line of my car. When I first saw them."

Later, on cross-examination, he testified:

"*Q.* How far were you from the 2 people in the street when you first saw them?

"*A.* I would say about 45 feet.   *   *   *

"*Q.* Where were they at that time?

"*A.* They were just directly in my line of travel when I first saw them. They were continuing right across the boulevard, which they got to the center.

"*Q.* Where were they when you were 30 feet from them?

"*A.* Where were they then? Well, they were moving, still moving towards the center of the boulevard. * * *

"*Q.* Where were they when you were 20 feet from them? That is a simple question.

"*A.* Walking towards the center of the highway.

"*Q.* Still walking towards the center? Where were they when you were 10 feet from them?

"*A.* Probably in the middle of the highway then.

"*Q.* Then in the time in which you traveled the next 10 feet, the girl stepped back 6 feet?

"*A.* Well, it is so long ago that all I can say, they were almost in the center of the boulevard.

"*Q.* You stated earlier, did you not, that the plaintiff was approximately 5 or 6 feet west of the center line at the time your left fender hit her, did you not?

"*A.* That is right.

"*Q.* Are you saying then that in the time you proceeded from 10 feet north of her that she jumped back 6 feet?

"*A.* By the time I got down to the fellow there, she must have jumped back that far, because I was still watching traffic coming south."

The defendants argue that because Patricia did not testify that she maintained her look to the left (north) after she reached the center, she was guilty of contributory negligence as a matter of law. She testified that she was there only about half a minute when she was hit. It is doubtful if a look by the plaintiff toward the north could have saved her from being hit. The driver of the taxicab testified that she jumped back 6 feet into the path of his vehicle, or against it. The court did not err in submitting the question of her negligence to the jury. Credibility

of the witnesses was for the jury, and the issue as to which was the true version, under the conflicting testimony, as to how the accident happened was properly a question of fact.

Affirmed.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.